# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **DEBORAH FRAZIER,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:10-cv-02110 -TWT-AJB** |
| **v.** | : | |
| | : | |
| **ABSOLUTE COLLECTION SERVICE,** | : | |
| **INC.,** *a North Carolina corporation*, | : | |
| | : | |
| **Defendant.** | : | |

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), N.D. Ga. R. 72.1(B), (D), and Standing Order 08-01 (N.D. Ga. June 12, 2008). Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within **fourteen (14)** days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for

AO 72A
(Rev.8/8
2)

obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this   28th   day of  December  , 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEBORAH FRAZIER,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:10-cv-02110 -TWT-AJB** |
| **v.** | : | |
| | : | |
| **ABSOLUTE COLLECTION SERVICE,** | : | |
| **INC.,** *a North Carolina corporation*, | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Currently before the Court is Plaintiff's Motion for Entry of Default Judgment, [Doc. 7]. For the reasons set forth herein, the undersigned **RECOMMENDS** that Plaintiff's motion for default judgment be **GRANTED**.

### I.    Introduction

On July 7, 2010, Plaintiff filed a one-count civil action against Absolute Collection Service, Inc., ("Absolute" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). [Doc. 1]. Plaintiff served Defendant on August 2, 2010, which meant that Defendant had until August 23, 2010, to file an answer. [Doc. 3]. When Defendant failed to file its answer, Plaintiff, with the Court's prompting, sought and was granted an entry of default from the Clerk

pursuant to FED. R. CIV. P. 55(a).  [*See* Docs. 5-6, 9; Dkt. Entry dated 12/1/2010].

Plaintiff now seeks a default judgment against Defendant.  [Doc. 7].[1]

After reviewing the materials submitted with the motion for default judgment, the undersigned concludes that Plaintiff is entitled to $1,000 in statutory damages, $1,430 in attorneys' fees, and $385 in costs because of Defendant's violations of the FDCPA.  The undersigned explains these conclusions in detail below.

---

[1]      The undersigned notes that Plaintiff filed her motion for default judgment prior to the Clerk's entry of default.  [*See* Doc. 7 (default judgment); Doc. 9 (default)]. Under Rule 55 of the Federal Rules of Civil Procedure, there is "a two-step procedure for obtaining a default judgment."  *Deforest v. Johnny Chisholm Global Events, LLC*, No. 3:08-cv-498, 2010 WL 1792094, *7 (N.D. Fla. May 4, 2010); *see also* FED. R. CIV. P. 55(a), (b).  First, the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  FED. R. CIV. P. 55(a).  Second, after a default is entered, the party must then apply to the court for a default judgment.  *See* FED. R. CIV. P. 55(b).  As a result, "the clerk's entry of default must precede an application" for default judgment.  *Deforest*, 2010 WL 1792094 at *7 (citing *Fairman v. Hurley*, 373 F. Supp. 2d 227, 231 (W.D.N.Y. 2005)); *Travelers Cas. & Surety Co. of Am., Inc. v. E. Beach Dev., LLC*, Civil Action No. 07-0347-WS-B, 2007 WL 4097440, *1 (S.D. Ala. Nov. 14, 2007) ("The point is that a clerk's entry of default must precede an application to the district court for entry of default judgment."). Plaintiff's motion for default judgment originally was filed prematurely because Plaintiff had not received permission to seek default out of time when she filed her motion for default judgment.  [*See* Docs. 7-9]. The undersigned concludes that with the subsequent entry of default, the premature filing for default judgment is harmless, so the District Court need not require Plaintiff to re-file her motion for default judgment.

2

II.    *Findings of Fact*

    A.    *Facts Relating to the FDCPA Claims and Damages*[2]

    1.    Defendant uses the mail and telephones in its business, the principal purpose of which is debt collection.  (Complaint ¶¶ 10-12 in Doc. 1).

_____

[2]    These facts are derived from the well-pleaded allegations in Plaintiff's complaint and Plaintiff's declaration submitted with the motion for default judgment. *See Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that a party's default admits the "well-pleaded allegations of fact"); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate . . . due process[.]"); *Super Stop No. 701, Inc. v. BP Prods. N. Am. Inc.*, No. 08-cv-61389, 2009 WL 5068532, *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that in default judgment proceedings unchallenged affidavits are routinely used to establish liability and damages).  However, the undersigned does not base these facts on allegations that are not well pleaded or on any conclusions of law. *Nishimatsu Const. Co.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

    Plaintiff states that the Court can deem the following three statements admitted: (1) "The placement of telephone calls without meaningful disclosure of the caller's identity, in violation of 15 U.S.C. § 1692d(6)"; (2) "The use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e"; and (3) "The failure to disclose in subsequent communications that the communication is from a debt collector, in violation of 15 U.S.C. § 1692d(11)." [*See* Doc. 7-1 at 2 (citing paragraphs 24-26 in the complaint)]. The undersigned concludes that it is inappropriate to treat these statements as admitted because they merely recite the statutory language and/or present conclusions of law. Instead, the undersigned, in making findings of fact, cites to only those well-pleaded factual allegations in the complaint and the non-conclusory statements in Plaintiff's declaration.

3

2.     To perform its business, Defendant regularly collects or attempts to collect debts owed to others.  (*Id.* ¶ 13).

3.     Plaintiff incurred a debt following an emergency room visit to the Gwinnett Hospital.  (Frazier Decl. ¶ 7 in Doc. 7-3).

4.     This visit was for Plaintiff's own personal or household purposes. (Frazier Decl. ¶ 8).

5.     Beginning around June 2010, Absolute attempted to collect this Gwinnett Hospital debt from by leaving a "handful" of identical recorded messages on Plaintiff's home phone.  (Complaint ¶ 16; Frazier Dec. ¶¶ 6, 10).

6.     Absolute did not identify itself in these messages, did not state that the calls were from a debt collector, and did not state that the communications were an attempt to collect a debt.  (Complaint ¶¶ 17-19).

7.     Plaintiff recorded one message from Absolute, which she received in late May or early June of 2010.  This message stated:

> Hello, this is an important courtesy call for Deborah Frazier.  Please return this call to a customer service representative.  Our phone number is 800 752 4172.  Our hours of operation are Monday through Thursday 8:30 am to 9:00 pm, Friday from 8:30 am to 5:00 pm, and Saturday from 8:00 am to 1:00 pm.  All times are for the eastern time zone.  Thank you.

(Frazier Decl. ¶ 14).

4

B.    *Facts Relating to Costs and Attorneys' Fees*[3]

1.    James M. Feagle, who has been practicing law for 19 years, seeks attorney's fees in this case. (*See* Feagle Aff. ¶ 7 in Doc. 7-4).

2.    Feagle billed 4.4 hours in this case. (Time Ticket Diary Report in Doc. 7-5; Feagle Aff. ¶ 27).

3.    These 4.4 hours were spent as follows: (1) .6 hours meeting with client; (2) .6 hours finalizing the complaint; (3) .2 hours ensuring that service of process was made; (4) .3 hours discussing a settlement demand with Absolute's attorney; (5) .2 hours reviewing two court orders; (6) .6 hours rectifying a missed court deadline; (7) .5 hours meeting with client concerning her declaration for the default judgment motion; and (8) 1.4 hours drafting and finalizing the default judgment motion. (Time Ticket Diary Report in Doc. 7-5).

---

[3]    In summarizing these facts relating to costs and attorney's fees, the undersigned uses the affidavits and documents that were submitted with Plaintiff's motion for default judgment. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (noting that a hearing on damages is unnecessary where essential evidence is in the record); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that court did not have to hold a hearing to determine attorney's fees where detailed affidavit was provided); *cf. Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("[T]he district court traditionally has had the power to make an [attorney's fee] award without the need of further pleadings or an evidentiary hearing. . . .  It is perfectly proper to award attorney's fees based solely on affidavits in the record.").

5

4.      Feagle seeks an hourly rate of $325 per hour, which is his usual hourly rate and which he has been awarded in other recent federal cases.  (Feagle Aff. ¶¶ 28-29).

5.      Plaintiff incurred a filing fee cost of $350 and expended $35 to pay for the Wake County, N.C. sheriff's office to serve process on Defendant.  (Feagle Aff. ¶ 32).

III.    *Conclusions of Law*

A.      *Default Judgment Standard*

Although the Clerk entered default against Defendant, this does not mean that a default judgment is automatically warranted for Plaintiff.  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] default does not in itself warrant the court in entering a default judgment.");  *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004).  This is so because "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" when a plaintiff seeks a default judgment.  *Nishimatsu Const.*, 515 F.2d at 1206.  Instead, "[t]here must be a sufficient basis in the pleadings for the judgment entered."  *Id.* at 1206.  Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration.  *See Antoine*, 66 F.3d at 111 ("Use of affidavits in granting default judgments does not violate . . . due process[.]");  *Super Stop No. 701, Inc.*, 2009 WL 5068532 at *2 n.4.  The undersigned therefore reviews Plaintiff's

declaration testimony, the well-pleaded allegations in her complaint and the reasonable inferences from these allegations to determine whether Plaintiff has stated claims for relief. *See DIRECTV, Inc.*, 318 F. Supp. 2d at 1127; *see also United States v. Kahn*, 164 Fed. Appx. 855, 858 (11th Cir. Jan. 17, 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim.").  In other words, "[e]ven after default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Wright, Miller & Kane, 10A Fed. Pract. & Proc. § 2688 (3d ed.).  The undersigned first turns to whether Plaintiff has presented sufficient evidence and allegations to establish liability for her FDCPA claims before examining damages, attorney's fees, and costs.

B.    *FDCPA Liability*

The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers. *See* 15 U.S.C. § 1692(e); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).  To prevail on an FDCPA claim, a plaintiff must establish that:

> (1) [she][has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in

7

a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Buckley v. Bayrock Mortg. Corp.*, Civ. No. 1:09-cv-1387-TWT, 2010 WL 476673, *6 (N.D. Ga. Feb. 5, 2010) (Thrash, J., adopting Vineyard, M.J.) (quoting *Beadle v. Haughey*, No. Civ. 04-272-SM, 2005 WL 300060, *3 (D.N.H. Feb. 9, 2005), and *Russey v. Rankin*, 911 F. Supp. 1449, 1453 (D.N.M. 1995) (alteration in original)); *see also McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008)). Each element of the FDCPA claim is discussed separately.

> ### 1.   *Collection Activity Arising from a Consumer Debt*

This element of an FDCPA claim has two requirements. First, there must be collection activity. Second, this activity must relate to a consumer debt. *See Buckley*, 2010 WL 476673 at *6. Each requirement is discussed below, starting with collection activity.

The "FDCPA does not expressly define 'collection activity.' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010). "While the statute contains no clear definition of what constitutes a 'debt collection activity,' courts, in attempting to effect the purpose of the FDCPA, are lenient with its application." *Sanz v. Fernandez*, 633 F. Supp. 1356, 1359 (S.D. Fla. 2009) (citing *Heintz v. Jenkins*,

AO 72A
(Rev.8/8
2)

514 U.S. 291, 293-96 (1995) (quoting Black's Law Dictionary 263 (6th ed. 1990), which states that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings.")).

The undersigned concludes that the allegations in the complaint along with the Plaintiff's declaration establish the collection activity element. The complaint and Plaintiff's declaration indicate that Defendant made a "handful" of telephone calls to Plaintiff relating to her debt stemming from her ER visit to Gwinnett Hospital. (*See* Complaint ¶ 16; Frazier Decl. ¶¶ 6-7, 10, 14). These telephonic communications aimed at collecting a debt constitute collection activity.

The undersigned next turns to whether this collection activity was aimed at collecting a consumer debt. A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). In other words, the FDCPA is limited to "consumer debt," *Heintz*, 514 U.S. at 293, and it does not cover debts arising from business loans, *Lingo v. City of Albany Dep't of Community & Econ. Dev.*, 195 Fed. Appx. 891, 893 (11th Cir. Sept. 11, 2006). For these debts to fall within the FDCPA, they must involve consumer transactions, which entail "consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more

9

than her own negligence." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998).

The undersigned concludes that Plaintiff's debt stemming from the hospital visit constitutes a consumer debt. Plaintiff has asserted that the hospital visit was for her own personal or household purposes. (*See* Frazier Decl. ¶ 8). Although Plaintiff has not argued or established that an obligation between her and Gwinnett Hospital existed, it is reasonable to assume that Plaintiff assumed an obligation to pay for the ER services rendered by Gwinnett Hospital. As a result, Plaintiff's obligation to pay a hospital bill that arose for personal purposes is a consumer debt. 15 U.S.C. § 1692a(5); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 526 (E.D. Pa. 1996) (concluding attempt to collect hospital bill was a debt under the FDCPA); *cf. Herber v. Prof. Adjustment Corp.*, No. 8:10-cv-794, 2010 WL 2103025, *1 (M.D. Fla. May 25, 2010) (granting default judgment in FDCPA case where plaintiff alleged that debt arose from hospital bill).

Accordingly, the undersigned concludes that Plaintiff has established the first element of her FDCPA claim - - there was collection activity of a consumer debt.

### 2.    Debt Collector

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

The undersigned concludes that Plaintiff has established that Defendant was a debt collector.  Here, the complaint indicates that Defendant uses the mails and telephone communications in its business in which it regularly collects debts owed to others.  (*See* Complaint ¶¶ 10-13).  These allegations establish that Defendant is a debt collector under the FDCPA, so the Plaintiff has established the second element of her FDCPA claim.

### 3.    Acts Prohibited under the FDCPA

In her motion for default judgment, Plaintiff indicates that Defendant violated 15 U.S.C. §§ 1692d(6) and 1692e(11).  [*See* Doc. 7 at 3].  Each provision is discussed separately.

### a.    15 U.S.C. § 1692d(6)

Under § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the

11

collection of a debt," which includes "the placement of telephone calls without meaningful disclosure of the caller's identity."  15 U.S.C. § 1692d(6).  When a debt collector places phone calls without identifying itself, there is no additional requirement that these calls contain harassing language.  *Edwards v. Niagra Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1352 (N.D. Ga. 2008) (Martin, J.), *aff'd on other grounds by* 584 F.3d 1350 (11th Cir. 2009).

Plaintiff's complaint and declaration allege that starting around June 2010, Defendant left a "handful" of messages on her home phone without disclosing its identity or that it was attempting to collect a debt.  (Complaint ¶¶ 16-17, 19; Frazier Decl. ¶¶ 10-11, 14).  These unidentified messages from Defendant violated § 1692(d)(6).  *See Edwards*, 586 F. Supp. 2d at 1352.  As a result, Plaintiff has established the third element of her FDCPA claim.  Since Plaintiff also asserts a violation of 15 U.S.C. § 1692e(11), the undersigned addresses this violation as well.

   b. *15 U.S.C. § 1692e(11)*

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of a debt," including the failure to disclose in initial and subsequent oral communications that "the

12

communication is from a debt collector."   15 U.S.C. § 1692e(11); *Edwards*, 586 F. Supp. 2d at 1353 & n.1.

The allegations in Plaintiff's complaint and declaration demonstrate a violation of § 1692e(11).  Plaintiff states that Defendant left messages without identifying that they were from a debt collector.  (Complaint ¶¶ 16, 19).  The one message cited in Plaintiff's Declaration also demonstrates that the messages never stated that they were from a debt collector.  (*See* Frazier Decl. ¶ 14).  "This is plainly a violation of the statute."  *Edwards*, 586 F. Supp. 2d at 1352-53 (noting that undisputed evidence that defendant failed to disclose communication was from a debt collector violated § 1692e(11)).  The undersigned therefore finds that Plaintiff also establishes the third element of her FDCPA claim under § 1692e(11).

Accordingly, the undersigned concludes that the well pleaded allegations in Plaintiff's complaint and her declaration testimony entitle her to default judgment on the FDCPA claims.

C.    *Damages*

Since Plaintiff is entitled to default judgment on her FDCPA claims, the undersigned now turns to the issue of damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of

13

damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007).  To make a damages determination, "[a]n evidentiary hearing is not a *per se* requirement" for default judgment under Rule 55(b)(2) because this rule "speaks of evidentiary hearings in a permissive tone." *Smyth*, 420 F.3d at 1232 n.13.  Although there is no *per se* hearing requirement, a hearing should ordinarily be held except in "limited circumstances" such as when "all essential evidence is already of record." *Id.*  District courts in the Eleventh Circuit have noted that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages.  *See PNCEF, LLC v. Hendricks Bldg. Supply LLC*, --- F. Supp. 2d ----, ---- n.9, 2010 WL 3672257, *4 n.9 (S.D. Ala. Sept. 10, 2010) (citing cases); *Taylor v. Wachovia Mortg. Corp.*, No. 1:07-cv-2671, 2009 WL 249353, *11 (N.D. Ga. Jan. 30, 2009) (Vineyard, M.J., adopted by Thrash, J.) ("[W]here an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required.") (quoting *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1085 (S.D. Ala. 2007)); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).  The undersigned concludes that a hearing on damages is unnecessary because Plaintiff has only sought statutory

14

damages and the essential evidence as to these damages is already in the record.  *Cf.*

*Huynh*, 318 F. Supp. 2d at 1129 (concluding that a hearing was not necessary where

defendant only sought statutory damages).  As a result, the undersigned examines

Plaintiff's arguments concerning statutory damages presented in her motion for default

judgment.

Plaintiff argues that she is entitled to the $1,000 statutory maximum in damages

based on the Defendant's violations of the FDCPA.  [Doc. 7 at 4-6].  First, Plaintiff

notes that Defendant committed two separate violations of the FDCPA, namely

Absolute's failure to identify its identity, in violation of 15 U.S.C. § 1692d(6), and its

failure to identify that it was a debt collector, in violation of 15 U.S.C. § 1692e(11).

[*Id.* at 5].  Second, Plaintiff asserts that the maximum penalty has remained unchanged

since the FDCPA's enactment, so only the maximum will serve as a deterrent.

[*Id.* at 5].

Under the FDCPA, a debt collector that  fails to comply with any provision of

the FDCPA is liable for, *inter alia*, "in the case of any action by an individual, such

additional damages as the court may allow, but not exceeding $1,000."  15 U.S.C.

§ 1692k(a)(2)(A).  In determining statutory damages under § 1692k(a)(2)(A), a court

must consider "the frequency and persistence of noncompliance by the debt collector,

15

the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

The undersigned concludes that Plaintiff is entitled to the statutory maximum damages of $1,000 for the FDCPA violations. The unrebutted facts indicate that Defendant made telephone calls that violated two distinct provisions of the FDCPA on a handful of occasions. That Defendant made repeated calls suggests that Defendant acted in disregard of the FDCPA's requirements. Finally, Defendant through its default and non-appearance has not provided any basis for concluding that an amount less than the statutory maximum is appropriate.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff be **AWARDED** $1,000 in statutory damages for Defendant's violations of the FDCPA.

D.     *Attorneys' Fees and Costs*

Since Plaintiff successfully demonstrated that Absolute violated the FDCPA, she is entitled to "costs of the action, together with a reasonable attorney's fee." 15 U.S.C. § 1692k(a)(3). As a result, the undersigned turns to Plaintiff's request for attorney's fees and costs.

16

1.      *Attorneys' Fees*

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Hepsen v. J.C. Christensen and Assocs., Inc.*, No. 10-12231, 2010 WL 3329836 (11th Cir. Aug. 25, 2010) (calculating attorneys' fees under FDCPA using lodestar); *Moton v. Nathan & Nathan, P.C.*, 297 Fed. Appx. 930, 931-32 (11th Cir. Oct. 28, 2008) (holding that lodestar analysis must be used to calculate attorney's fees under the FDCPA). The product of the reasonable hourly rate and the reasonable hours expended is known as the lodestar calculation. *See Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991). Once the lodestar is calculated, this lodestar amount may be adjusted. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). However, such an adjustment is "rare" because "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).

A district court's order on attorney's fees "must articulate the decisions it made, give principled reasons for those decisions, and show its calculations." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1304); *see also NAACP v. City of Evergreen*, 812 F.2d 1332, 1335 (11th Cir. 1987) ("A prerequisite for our review of an

17

attorney's fee award is that the district court's opinion must have explained the reasons for the award with sufficient clarity to enable an appellate court to intelligently review the award."). The undersigned therefore must first determine the reasonable hourly rate and then determine the reasonable number of compensable hours. *See Loranger*, 10 F.3d at 781.

a.      *Reasonable Hourly Rate*

The reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The party seeking attorney's fees has the burden of providing "satisfactory evidence" that her rate "is in line with prevailing market rates." The amount that an attorney charges fee-paying clients is "powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.' " *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000). *But see Loranger*, 10 F.3d at 781 ("By 'satisfactory evidence,' we mean 'more than the affidavit of the attorney performing the work.' ") (quoting *Norman*, 836 F.2d at 1299). A court may consider, however, its own knowledge and experience concerning reasonable and proper fees. *Loranger*, 10 F.3d at 781.

18

The undersigned concludes that the hourly rate of $325 for Feagle is reasonable. In the default judgment motion, Plaintiff points to four sources as evidence of the reasonableness of Feagle's hourly rate. First, Plaintiff cites to Feagle's experience and awards in other FDCPA cases. [Doc. 7 at 6-7]. Second, Plaintiff asserts that attorney James Hunt has opined that the requested hourly rate is reasonable. [*Id.* at 7]. Third, she notes that the hourly rate is consistent with the Laffey Matrix. [*Id.* at 7-10]. Fourth, Plaintiff identifies other cases in which Judges in this District have awarded a similar hourly rate. [*Id.* at 10-11]. The undersigned concludes that the evidence identified in the motion for default judgment establishes the reasonableness of the hourly rate requested. The undersigned adds that, based on his own experience and knowledge, the $325 hourly rate is reasonable for an experienced attorney in the Northern District of Georgia. Accordingly, the undersigned finds that Feagle's requested hourly rate of $325 is reasonable.

### b.      *Reasonableness of Compensable Hours*

To show entitlement to recover attorney's fees, "counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Am. Civil Liberties Union*

19

*of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).  In making a reasonableness determination, courts determine whether the hours spent on the litigation are excessive, redundant, or otherwise unnecessary.  *Hepsen*, 2010 WL 3329836 at *2 (citing *Norman*, 836 F.2d at 1301).  Unless a fee application is voluminous, the Eleventh Circuit requires courts to provide an hour-by-hour explanation of why certain hours are excluded from compensation.  *See Loranger*, 10 F.3d at 783 & n.9.

The undersigned concludes that the 4.4 hours spent by Feagle in this case are reasonable.  A review of the hours indicates that the amount of time Feagle spent on the case was appropriate for the work product presented to the Court.  The complaint and default judgment motion are standard documents used by Feagle and his law firm in FDCPA cases, indicating that little time was needed to prepare and draft these documents.  Also, the work for which Feagle seeks reimbursement involves activities normally performed by an attorney, including drafting the complaint, reviewing court orders, drafting the motion, and ensuring service of process was made.  This work by Feagle is not excessive, redundant or otherwise unnecessary.  Accordingly, the undersigned concludes that Feagle is entitled to attorney's fees based on the 4.4 hours of work on this case.

20

> c.   *Adjustment of the Lodestar Amount*

The lodestar amount may be adjusted, *Norman*, 836 F.2d at 1302, but "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)); *see also Perdue*, 130 S. Ct. at 1673 (noting a " 'strong presumption' " of reasonableness that attaches to a lodestar calculation of attorney's fees).  The lodestar may be adjusted downward where "the plaintiff was partially successful in his claims." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008).  Also, "upward adjustments of the lodestar figure are still permissible . . . in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley*, 478 U.S. at 565 (quoting *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)); *see also Perdue*, 130 S. Ct. at 1673.

The undersigned concludes that there is no reason to adjust the lodestar amount in this case. First, this is a typical FDCPA case as demonstrated by the form documents filed by Plaintiff, so it is hardly the "rare" or "exceptional" case that requires an upward adjustment.  Second, Plaintiff succeeded on her FDCPA claims, and Defendant, by

21

failing to defend this case, did not make any showing that a downward adjustment is required.  As a result, a downward adjustment is also inappropriate.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff be **AWARDED** $1,430[4] in attorney's fees under § 1692k(a)(3).

        *2.    Costs*

Besides attorney's fees, a prevailing FDCPA plaintiff is entitled to "costs of the action." 15 U.S.C. § 1692k(a)(3).  Courts have determined that the cost award pursuant to § 1692k(a)(3) is limited to the costs allowed under 28 U.S.C. § 1920.  *Montgomery v. Fla. First Fin. Group, Inc.*, No. 6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, *15 (M.D. Fla. Aug.12, 2008) (citing cases).  Section 1920 allows for the recovery of "[f]ees of the clerk and marshal" 28 U.S.C. § 1920(1).  Based on this language, courts have concluded that § 1920(1) permits the recovery of the filing fee.  *See Wallace v. The Kiwi Group, Inc.*, 247 F.R.D. 679,687 (M.D. Fla. 2008) (indicating that filing fee is a recoverable cost under § 1920); *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 351 (N.D. Ga. 1992) (same) (Forrester, J.).  Also, the Eleventh Circuit has concluded that § 1920(1) allows for a party to recover private process server fees so

---

[4]    This figure represents the product of the 4.4 hours spent on the case and the $325 hourly rate.

AO 72A
(Rev.8/8
2)

long as the fees do not exceed the statutory fees in 28 U.S.C. § 1921. *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) ("We hold that private process server fees may be taxed pursuant to §§ 1920(1) and 1921."). Since Plaintiff seeks to recover the filing fee of $350 and the private process server fee of $35,[5] [*see* Doc. 7 at 13], she is entitled to recover $385 in costs under § 1692k(a)(3).

Accordingly, the undersigned **RECOMMENDS** that Plaintiff be **AWARDED** $385 in costs under § 1692k(a)(3).

*IV.    Conclusion*

For the reasons discussed above, the undersigned **RECOMMENDS** that Plaintiff's motion for default judgment, [Doc. 7], be **GRANTED** and that Plaintiff be **AWARDED** $1,000 in statutory damages, $1,430 in attorney's fees, and $385 in costs.

The Clerk is **DIRECTED** to send this Report and Recommendation by first class mail to Defendant at the following address:

Absolute Collection Service Inc.
421 Fayetteville Street Mall Apt: 500

---

[5]    "When the U.S. Marshal's Service serves process, its rate is $55 per hour for each item served, plus travel costs and any other out-of-pocket expenses." *K.S.R. X-Ray Supplies, Inc. v. Southeastern X-Ray, Inc.*, No. 09-cv-81454, 2010 WL 4960959 at *1 (S.D. Fla. Dec. 1, 2010) (citing 28 C.F.R. § 0.114(a)(3)). As a result, the $35 service of process fee is reasonable since it does not exceed the fees charged by the U.S. Marshal's Service.

23

Raleigh, NC 27601-1792

Finally, the Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO DIRECTED AND RECOMMENDED**, this 28th day of December, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

24